[Crim. No. 4044.   Third Dist.   Jan. 9, 1967.]

In re EUGENE BELL on Habeas Corpus.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Theodore T. N. Slocum, Deputy Attorney General, for Respondent.

PIERCE, P. J.—Our inquiry on this petition for habeas corpus has developed progressively. Originally we issued an order to show cause limited to the questions whether on petitioner's arraignment in the superior court he had been suffi-

ciently apprised of his right to counsel and whether his express waiver of that right had been intelligent and effective.

Bell is presently confined in the California State Prison at Folsom, Represa, California, pursuant to a judgment by the Los Angeles Superior Court entered February 7, 1961, after a jury trial and verdict of guilty on two counts, one of violating Penal Code section 286 (sodomy) and a second of violating section 288a (sex perversion).

At the preliminary hearing and in all proceedings before arraignment in the superior court Bell was represented by court-appointed defense counsel, a deputy public defender. There is no showing (and no indication from the record of the preliminary hearing) that such representation was inadequate.

When Bell first appeared for arraignment in the superior court, he appeared without counsel; he told the court he had counsel; the court continued the matter and told petitioner to inform his attorney of the new arraignment date. On that new date Bell again appeared without counsel, informed the court that he had money to employ an attorney but that he did not want an attorney and insisted upon representing himself, notwithstanding a strong adjuration by the judge that it was very unwise for him to do so and that if he did represent himself he would be held to the same rules as a defendant represented by counsel.[1] The information charging the defendant as indicated above was read.

The court did not expressly advise defendant of the nature of the charges nor the punishment therefor. After the reading of the information, Bell entered a plea of not guilty to both counts. At the trial he appeared without counsel, a deputy public defender who was present offered his services and Bell again affirmed that he wanted to represent himself. He was

[1]We quote herein that portion of the transcript wherein the judge advised Bell of his rights: "THE COURT: You insist on representing yourself? THE DEFENDANT: Yes. THE COURT: You have got a constitutional right to do it, but it is a very unwise thing to do. One of the first things that all of us learned when we went to law school is that a man who represents himself has a fool for a client. I am not saying you are a fool, you understand, but it means this, you get so close to the forest, you can't see it for the trees, and you are much better off having someone represent you. If you insist on representing yourself, you have a constitutional right to do it. But if you do it, you are going to be held to exactly the same rules as every other citizen is held to who is represented by counsel. You understand what I am talking about? THE DEFENDANT: Yes, sir, I do. THE COURT: Don't you think you better have a lawyer? THE DEFENDANT: No. THE COURT: Proceed with the arraignment."

then tried and convicted. There was no appeal from the judgment.

This is not petitioner's first petition for habeas corpus. Urging, *inter alia*, the same grounds as raised here—denial of right to counsel—a petition was filed in the California Supreme Court and denied without opinion on or about March 4, 1964. Three petitions, one to this court, one to the Superior Court of Sacramento, and another to the California Supreme Court have all been denied. Nevertheless (and notwithstanding these earlier proceedings) we issued the order to show cause because we considered the adequacy of defendant's waiver of counsel presented a serious question on the record then before us.

In *In re Van Brunt*, 242 Cal.App.2d 96 [51 Cal.Rptr. 136], this court said (on p. 103): "California law holds that persons accused of crime in any court of the state have a constitutional right to representation by counsel. (Cal. Const., art. I, § 13; *In re Newbern*, 53 Cal.2d 786, 790 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *Mattson*, 51 Cal.2d 777, 788-790 [336 P.2d 937]; *In re James, supra*, 38 Cal.2d 302 at p. 310 [240 P.2d 596].) . . . The California right includes judicial appointment of counsel when the accused is financially unable to employ an attorney. (Pen. Code, § 859; *In re Newbern, supra*, 53 Cal.2d at p. 790.). . . .

"The California right to counsel is paralleled by certain protections which the federal Constitution extends to accused persons in state criminal proceedings. The Fourteenth Amendment makes the Sixth Amendment's guarantee of counsel obligatory upon the states, requiring publicly supplied legal representation for indigent felony defendants. (*Gideon* v. *Wainwright*, 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) . . ."

An accused may, of course, waive counsel. But a waiver must be intelligent.

The California Supreme Court in *In re Johnson*, 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420], after stating the right of a defendant to waive counsel, adds on page 335: "Moreover, it is settled that 'The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, *upon the particular facts and circumstances surrounding that case,* including the background, experience, and conduct of the accused.' (Italics added.) (*Johnson* v. *Zerbst* (1938) *supra*, 304 U.S. 458, 464 [82 L.Ed 1461, 58 S.Ct. 1019, 146 A.L.R. 357]; accord, *People* v. *Ches-*

*ser* (1947) *supra,* 29 Cal.2d 815, 822 [4] [178 P.2d 761, 170 A.L.R. 246].) ██ Manifestly that determination must be made *before* any plea—guilty or otherwise—is accepted by the trial court, or the right to counsel loses most of its meaning and effectiveness. The making of this determination in a timely fashion is therefore the 'serious and weighty responsibility' of the trial judge. (*Johnson* v. *Zerbst* (1938) *supra,* 304 U.S. 458, 465.) ██ As we said in *Chesser* (at pp. 821 [1]- 822 [5] of 29 Cal.2d), 'The fact that defendant pleaded guilty is not conclusive. . . . In order for a trial judge to determine whether there has been a competent and intelligent waiver of counsel, he must first ascertain whether the defendant clearly understands the nature and effect of his waiver.' More particularly, 'the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he "understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted." ' (*In re James* (1952) 38 Cal.2d 302, 313 [9] [240 P.2d 596].) ''

At the time of oral argument we had before us only the petition, the transcript of the preliminary hearing and that portion of the transcript which appears above (in footnote 1). Superficially, it appeared therefrom that the trial court had not complied with the requirements spelled out in the *James* case, *supra,* in *In re Johnson, supra,* and in the cases cited therein. There was no showing that the trial judge advised Bell of the nature of the charge, the elements of the offense, the defenses available or the punishments which may be exacted.

Therefore, after oral argument we ordered that the entire transcript of the trial be prepared and filed. We also permitted further written argument bearing upon the question whether, assuming the adequacy of waiver of counsel to be doubtful, the petitioner had actually been harmed.

We have received and studied the entire transcript of the trial. Two boys, one 13, the other 17, testified to separate acts of sodomy committed by petitioner in the City of Los Angeles. The boys were unacquainted with one another. The 13-year-old testified that petitioner had sat next to him at a motion picture theater, had left with him, had joined him purportedly to walk home with him, and in a nearby building or building entrance had forcibly committed an act of sodomy. This

was on May 16, 1959. The older boy testified to an act of sodomy combined with other homosexual acts committed at petitioner's apartment on January 30, 1960. These acts were not accomplished by force. Two police officers testified. Officer Schlenz testified to an assertedly voluntary uncoerced statement by defendant on February 11, 1960. He said (in part): "Well, he told us he came to the Police Department because he wanted to turn himself in: that he had been molesting small boys, *and he had the urge to kill one of them and he wanted help.* (Italics added.)

"And he said he has been molesting boys for the last three or four years and he said he molested approximately 80 of them, he thought.

"He said from 1950 to 1959 he worked for a theater out on Western where he molested a lot of boys."

A continuation of the statement related to a specific incident coinciding with the testimony of the 13-year-old described above.

The second officer, Thomas Sena, testified to a conversation with petitioner on February 8, 1960. Again the conversation was during a voluntary visit by petitioner to "University Juvenile Station." In this conversation petitioner described a series of specific acts of sodomy with the same 17-year-old (mentioned by name) committed at petitioner's apartment. During the statement petitioner declared that *when the boy had tried to break off the relations petitioner had threatened to kill him.*

■ This court has held (per Justice Friedman) in a trilogy of cases (where a guilty plea was preceded by a waiver of counsel in proceedings before a magistrate) that the adequacy of a waiver can only be challenged by a petition for habeas corpus after final judgment where a loss or impairment of a crucial defense has resulted. (*In re Van Brunt, supra,* 242 Cal.App.2d 96; *In re Grayson,* 242 Cal.App.2d 110 [51 Cal.Rptr. 145]; and *In re Kelly,* 242 Cal.App.2d 115 [51 Cal.Rptr. 148].) ■ In the latter case we stated (on p. 123 of 242 Cal.App.2d): ". . . A closely related area of constitutional inquiry is that which appraises the adequacy of legal representation supplied the accused. In that area the courts adhere to the rule that a defense attorney's actions are vulnerable to a charge of inadequacy only if they cost the accused a crucial defense. [Citations.] If an unrepresented defendant's waiver of counsel costs him no potential defense or amelioration, his constitutional claims mount no higher

than those of one represented by counsel. For all that the record shows here, there was nothing a lawyer, however talented, could have done for petitioner. Lack of legal advice and courtroom representation cost him nothing.'' In a later case, *People* v. *Goldman* (on rehearing) 245 Cal.App.2d 376 [53 Cal.Rptr. 810], the same rule was applied by this court where inadequacy of counsel in presenting a motion for change of plea was involved.

We can see no differentiating factor to justify a change of the rule where, as here, an assumed inadequate waiver of counsel was followed by a not guilty plea and a trial—except, perhaps, that a closer scrutiny of the record is necessitated to make sure that no counsel, however gifted, could have changed the result. Exploration of the record in that regard would seem to be no different than that required to be made in any criminal case where the ''miscarriage of justice'' rule of *People* v. *Watson,* 46 Cal.2d 818, 835-836 [299 P.2d 243], or of *Wilson* v. *United States,* 149 U.S. 60, 70 [37 L.Ed. 650, 13 S.Ct. 765] (see also opinion of Justice Peters in *People* v. *Modesto,* 62 Cal.2d 436, at p. 462 [42 Cal.Rptr. 417, 398 P.2d 753]) is being applied.

Under the facts we can find no possibility of a result more favorable to petitioner had he been represented by counsel. He had made two unsolicited wholly voluntary confessions when he was not in custody. These, together with the testimony of the two boys, assembled a case so conclusive no jury could reasonably have found defendant not guilty. The motive of his confessions was also clear. Defendant, realizing his own growing uncontrollable drives—not only to gratify his homosexual appetites but to kill his victims—had, himself, asked to be removed from society. True, the admission of his ''in-custody'' extrajudicial statement repeating the confession would have been inadmissible several years later under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], but at the time of defendant's trial (April 8, 1960) these cases were not the law and no counsel, however astute, can be presumed to have had the prescience to foretell they would become the law. Secondly, even assuming that possibility, the *Dorado*-condemned evidence added nothing to the already ironclad case against defendant. (See *People* v. *Cully,* 236 Cal.App.2d 769, 778 [46 Cal.Rptr. 644].) Also where, as here, the judgment was final *ante Escobedo* (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct.

1758]) *Dorado* error in admissibility of the third statement is unavailable to petitioner on habeas corpus. (*In re Lopez*, 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380] ; *In re Poe*, 65 Cal.2d 25, 30 [52 Cal.Rptr. 896, 415 P.2d 784], footnote 4: see also *People* v. *Garner*, 234 Cal.App.2d 212, 215-216 [44 Cal.Rptr. 217], footnote 1.) ▮ Petitioner's argument that a conviction cannot be based upon the uncorroborated testimony of an accomplice fails for the reasons stated. It would fail anyway. The younger of the two boys was not an accomplice.

The record now before us, in addition to showing the guilt of petitioner beyond possible doubt, also shows great solicitude by the court for the protection of petitioner's rights during the trial. Notwithstanding the statement by the court that petitioner would be held to the same rules as though he were represented by counsel, he was not. The latitude extended by the judge, the leniency of his rulings and the restraint exercised by the prosecuting attorney all convince us he had a fair trial with an inevitable result.

▮ Lastly, although we have assumed for the purpose of the discussion above that waiver of counsel was inadequate because of the judge's inadvertent failure to apprise petitioner of the penalty possibilities of the charges for which he was being tried, the fact that the waiver was not an intelligent one is not free from doubt. Petitioner's "rap" sheet which is before us shows he was no tyro when he made this waiver. He had, to coin a phrase, been in the "toils of the law" off and on since 1958. This is a factor of some significance in determining whether an accused is aware of his constitutional rights (see *In re Poe, supra,* 65 Cal.2d 25, 35, footnote 7) ; also petitioner's demeanor at the trial and the manner in which he handled his defense by no means indicate a man of inferior intelligence. This is not a matter which can be illustrated by excerpts from the record taken from context. It is an overall impression after a reading of the entire transcript.

The order to show cause is discharged. The petition is denied.

Regan, J., concurred.